**Albert E. ANDREWS, III, Plaintiff,**

v.

**Lieutenant General William KNOWLTON, Superintendent, United States Military Academy, et al., Defendants.**

No. 73 Civ. 2474.

United States District Court,
S. D. New York,
Civil Division.

Dec. 7, 1973.

Paul J. Curran, U. S. Atty., New York City, by William R. Bronner, New York City, of counsel, for defendants.

Thal & Youtt, New York City, for plaintiff; Harry E. Youtt, New York City, of counsel.

## OPINION

WHITMAN KNAPP, District Judge.

This action was commenced on June 4, 1973 by a West Point Cadet who has been found by a Board of Officers to have violated the Cadet Honor Code by making a false statement, and thus faces imminent separation from the Academy and the prospect of serving two years in the military as an enlisted man. The complaint seeks a declaratory judgment that the Academy proceedings which established his violation be rendered void, and injunctive relief to prevent his separation.

On June 14, 1973 the Court dismissed the complaint in White v. Knowlton, 361 F.Supp. 445, a suit brought by other West Point Cadets. The government thereafter moved to dismiss here, and plaintiff cross-moved for summary judgment or in the alternative for leave to proceed with discovery.

Insofar as the complaint in the instant case states claims that were rejected in *White*, they are dismissed for the reasons there stated. The questions remaining to be decided are:

1. Whether the exclusionary rule should have been applied to suppress false statements made by plaintiff;

2. Whether the Uniform Code of Military Justice should have governed the proceedings rather than administrative procedure, and

3. Whether discovery should be permitted in aid of plaintiff's attempt to establish that the Board of Officers may have been a) fatally biased against him, and b) tainted by the Cadet Honor Committee proceedings.

## The Facts

On February 4, 1973, after having been observed for several hours sitting in a car on the Academy grounds, the plaintiff was apprehended by military police and charged with a disciplinary infraction described as "gross lack of judgment."

Academy regulations require that cadets charged with such infractions furnish to the authorities statements called "held reports" or "Explanations of Report." On February 7 and 8 plaintiff provided such accounts of the episode. In the latter account he claimed that he had been improperly on the premises for only a short while. That statement was in conflict with those made by the military police, who stated that they had observed plaintiff on the grounds for several hours. Accordingly plaintiff's reports were referred to the Cadet Honor Committee for investigation into the possible violation of the Honor Code maxim that "a cadet does not lie . . . ." In March the Committee charged plaintiff with a violation for having lied in the Report and subsequently "convicted" him of it. Thereafter plaintiff requested that a Board of Officers be convened to hold a hearing on the charge. Upon a full hearing at which the statements were received in evidence, the Board issued its finding that plaintiff had lied about the length of time he had been on campus on the night in question.

## 1. Suppression

Briefly stated, plaintiff's contention is that Miranda warnings should have preceded the request that he submit his second Explanation of Report, and the failure to administer the warnings should have triggered the exclusionary rule as to that Report.

Generally speaking, Miranda warnings need only be given when a person, upon whom suspicion has focused for commission of a crime, is interrogated by law enforcement officials under such circumstances that he feels his freedom of movement is restricted.

The Court however need not decide whether the facts of this case describe a situation sufficiently custodial to have required Miranda warnings, because the Court finds persuasive the government's contention that in any event failure to give warnings cannot excuse subsequent false statements offered by a suspect in order to exculpate himself.

The government analogizes the situation at bar to that where a person suspected of a crime perjures himself before a grand jury in the absence of Miranda warnings, and then seeks to prevent prosecution for perjury (by invoking the exclusionary rule) on the basis of absence of warnings. Such failure to warn does not require exclusion of the perjurious statement in the subsequent perjury prosecution. United States v. Winter (2d Cir. 1965, Judge Weinfeld) 348 F.2d 204; United States v. Ponti (E.D.Pa.1966) 257 F.Supp. 925; United States v. Provinzano (E.D. Wis.1971) 326 F.Supp. 1066. Were it otherwise, one would be well-advised to give false testimony, in the hope of avoiding prosecution for the offense originally charged with assurance that there could be no prosecution for the perjury by which such result had been achieved.

When the policy considerations behind Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, are examined, it becomes evident that the purpose in requiring warnings is to deter the building of criminal cases by the expedient of coercing confessions from suspects or defendants. This policy

would be in no way furthered by ruling that defendants may not be held accountable for lies told in deliberate effort to avoid prosecution.

 In the instant case, the lie about the length of time plaintiff had been on the grounds contained in his Report— prepared in the absence of warnings— was the analytic equivalent of perjurious testimony offered to mitigate the seriousness of an offense previously committed. The lie was therefore admissible evidence in the proceeding brought to establish the lie—i. e., the Officer Board hearing.

Plaintiff does not quarrel with the analogy to perjurious testimony, but argues that such testimony would not be admissible in a perjury prosecution had it been deliberately evoked from the defendant to satisfy suspicions that had arisen on the part of law enforcement officials. For this proposition he cites Brown v. United States (8th Cir. 1957) 245 F.2d 549, where a perjury conviction was reversed on the ground that the defendant had been entrapped into testifying before a grand jury that had no valid purpose in hearing him.

In the instant case, the record of plaintiff's Officer Board hearing discloses that Captain Stillwell, a Tactical Officer for plaintiff's company, asked plaintiff to submit the critical second report —referred to as a "continuation of the original explanation of report"—after he had read the original report and "noticed that there was an omission of something that had not been dealt with that I assumed would be dealt with. This particular omission was something I felt had to do with the defense that was . . . or the explanation that was being used by Mr. Andrews in mitigation, and therefore I felt that it should be addressed. And this is what prompted me to ask for additional information. . . ."

While not explicit in the record, the omission in plaintiff's first report referred to is apparently any mention of *how long* he had been on the grounds.

Captain Stillwell further testified that at the time he requested the supplemental report he neither considered plaintiff's omission a lie nor suspected plaintiff of having lied, because:

"[M]y experience with explanations of reports is such that sometimes unless you specifically ask a question or tell them to deal with specifics, they sometimes do not—are not dealt with. . . ."

And Captain Stillwell emphasized that the inadequacies of plaintiff's first report had prompted the Captain to plan to require the second report *prior to* his discovering from the military police that plaintiff had in fact been observed for several hours on the Academy grounds. Upon discovering that a possible conflict on the question of time might exist, Captain Stillwell, according to his testimony, assumed that any such conflict would naturally be resolved by the supplemental report.

Finally, Captain Stillwell testified that:

"there are many cases on the record where the individual has not fully explained the offense or he has not done it in a proper manner that, yes, he is normally requested to write one again or to add additional facts that bear on the case. Yes, that would be normal procedure."

 The foregoing testimony has been set forth in some detail in order to lay to rest plaintiff's argument that he was deliberately instructed to furnish the supplemental report in the hopes of eliciting proof of a lie for which he was already suspected. The record makes plain that when the second report was sought the authorities had not focused

on a possible honor violation and did not seek the report for that reason.

Accordingly, the Court finds no constitutional infirmity in the admission into evidence at defendant's hearing of his second report, without deciding whether—had the report contained a confession rather than falsehoods—the totality of circumstances under which it was submitted by plaintiff would have triggered the requirement that Miranda warnings be first administered.

### 2. Jurisdiction

■ Plaintiff's second remaining contention is that the academic authorities at West Point lacked jurisdiction to hear and discipline him for lying, because the lie might conceivably have constituted some criminal offense for which plaintiff could have been court-martialed. For example plaintiff suggests that he might have been charged with the crime of signing a "false official statement" in violation of Article 107 of the Uniform Code of Military Justice, 10 U.S.C. § 907.

It is plaintiff's position that by virtue of the decision to invoke against him the Cadet Honor Code rather than the Uniform Code of Military Justice, he was denied valuable rights and safeguards but not excused from serious sanctions.

It goes without saying that many administrative and civil proceedings result in harsh and fateful consequences, and yet are not required to be conducted as if they were criminal prosecutions. See e. g. Goldberg v. Kelly (1970) 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 [termination of public assistance payments to a recipient requires prior administrative hearing, but one at which only "minimum procedural safeguards" need obtain (at 271, 90 S.Ct. 1011)]; Morrissey v. Brewer (1972) 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 [revocation of parole must be preceded by two hearings that meet the requirements of due

process, but neither is part of the criminal prosecution nor need be conducted as such]; Gagnon v. Scarpelli (1973) 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 [revocation of probation similarly requires prior hearing, but no need per se for counsel to be appointed].

Indeed, it has recently been held that even in disciplinary proceedings for minor offenses committed by servicemen in the military—known as summary courts-martial—appointment of counsel is not required to satisfy due process. Daigle v. Warner (9th Cir. 1973) 490 F.2d 358. Compare In re Gault (1967) 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 and In re Winship (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. In these latter cases it was held that juvenile proceedings were comparable in seriousness to a felony prosecution. In *Winship*, quoting from *Gault*, Mr. Justice Brennan observed (397 U.S. at 365–366, 90 S.Ct. at 1073):

". . . civil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts, for '[a] proceeding where the issue is whether the child will be found to be "delinquent" and subjected to the loss of his liberty for years *is comparable in seriousness to a felony prosecution'.*" (emphasis added).

In contrast to juvenile proceedings that may be benevolent in purpose but in effect are the functional equivalent of criminal prosecutions, the Cadet proceedings here attacked do not have consequences as disastrous as does their possible criminal counterpart. Had a criminal proceeding for violation of Article 107 been invoked, the possible penalty would have been confinement at hard labor not to exceed one year in addition to dishonorable discharge, and forfeiture of all pay and allowances. 10 U.S.C. § 856. The penalty for violation of the Cadet Honor Code, on the other hand, is, as al-

ready stated, separation from the Academy, which is followed by service in the military. The military service requirement is not a punishment. It is required by the Congress in order to satisfy the obligation to serve which was undertaken by the ex-cadet when he entered the military academy. See 10 U. S.C. § 4348.

### 3. *Issues of fact*

Plaintiff's final contention is that issues of fact exist as to a) the possible prejudicial impact of the Cadet Honor Committee findings upon those members of the Board of Officers who had been Cadets themselves, and b) the possible use made by the Board of Officers of the allegedly tainted fruits of the Cadet Honor Committee proceeding. Plaintiff contends that White v. Knowlton should not preclude trial of those issues because there plaintiffs were willing to proceed summarily on affidavits.

 The Court recognizes that White v. Knowlton is not binding here, but can see no material facts placed in issue by this plaintiff. As to (a), the officers were questioned carefully by the lawyer who represented plaintiff at the Board hearing about their ability to fairly consider the evidence. There is no reason to believe they would respond differently at deposition or trial. As to (b), plaintiff alleges no facts to indicate that "tainted" information was used by the Board of Officers, but merely speculates that it might have been. Given that plaintiff's false statements were properly considered by the officers (as to which see above), the evidence of his guilt was clearly substantial and there is no reason to believe that any prior proceedings had any bearing on the almost inescapable finding by the officers that plaintiff had violated the Honor Code.

Defendants' motion for summary judgment is accordingly granted and the complaint dismissed.

It is so ordered.