Cromwell A. **ROBERTS**, Plaintiff,

v.

Lieutenant-General William **KNOWLTON**, Superintendent, United States Military Academy, Defendant.

No. 74 Civ. 2274.

United States District Court, S. D. New York.

July 8, 1974.

Kunstler, Kunstler, Hyman & Goldberg, New York City, for plaintiff; Joan Goldberg, New York City, of counsel.

Paul J. Curran, U. S. Atty., for the S. D. N. Y., New York City, for defendant; Peter C. Salerno, New York City, of counsel.

ROBERT J. WARD, District Judge.

Plaintiff, a cadet at the United States Military Academy ("the Academy"), moves pursuant to Rule 65(a), Fed.R. Civ.P., for a preliminary injunction requiring defendant to grade his first-year final examinations and to permit him to begin the new term at the Academy when it commences on or about July 10, 1974. At the oral argument, defendant cross-moved pursuant to Rule 56, Fed.R.Civ.P., for summary judgment. Inasmuch as plaintiff's final examinations have now been graded and he has been furnished with an academic transcript covering the past year, this portion of plaintiff's motion is denied as moot. For the reasons hereinafter stated, the remainder of plaintiff's motion is denied and defendant's cross-motion is granted.

This action seeks to set aside the separation from the Academy of plaintiff, who has been found to have committed a violation of the cadet honor code by cheating on an examination. This finding was made by a board of five senior

officers who, by majority vote after a full hearing, stated:

"that the allegation is supported by substantial evidence, and that Cadet Cromwell Roberts, Company G–2, Class of 1977, United States Corps of Cadets, did, at West Point, New York, on or about 28 February 1974, cheat in violation of the cadet honor code, by marking on his answer card after entering the approved solution room of an Environment 102 written partial review."

Transcript of Board of Officers Hearing, p. 172.

The Court has reviewed the record of the hearing at which nine witnesses testified and thirteen exhibits were admitted in evidence. Plaintiff was present and was represented by counsel who cross-examined the witnesses against him and called six witnesses in his behalf, including plaintiff.

In the complaint, plaintiff alleges that the cadet honor code violates due process in that the only penalty for an honor code violation is separation from the Academy and, further, that this may also amount to cruel and unusual punishment in violation of the Eighth Amendment of the Constitution. Plaintiff also alleges that the finding of the Board of Officers denied him due process in that the decision was contrary to the evidence, that he was not found guilty beyond a reasonable doubt and that there was not substantial evidence to support the Board's finding and, finally, that the Board voted 3-to-2.

A review of the record reveals that on February 28, 1974 plaintiff, then in the middle of his first year as a cadet at the Academy, was observed in the apparent act of cheating on an examination in Environment 102 by two officers monitoring the examination. The alleged cheating consisted of marking answer cards in a room, separate from the examination room, where the answers to the examination were posted. This act was reported to the cadet honor committee, an organization entirely composed of and administered by cadets at the Academy whose function is to investigate and make findings with respect to alleged violations of the cadet honor code, which provides, "A cadet will not lie, cheat or steal, nor tolerate those who do."

The honor committee found that plaintiff had cheated on the examination. Pursuant to paragraph 16.04 of the Regulations of the Academy, plaintiff had the option (at the discretion of the Superintendent) of resigning, of being tried by court-martial, or of having his case heard by a board of senior officers. Plaintiff chose the last option and, by Letter Orders dated March 27, 1974, a board of five officers was appointed, and Captain Arthur F. Lincoln, Jr. was appointed as his counsel. It should be noted that plaintiff had the right to retain civilian counsel.

Plaintiff was notified in advance of the names of the witnesses who were expected to testify against him, and of the precise act of cheating that was being alleged. His counsel was given a full opportunity to challenge the five members of the board for bias and, as noted above, to cross-examine witnesses, and to present witnesses in plaintiff's behalf.

The board of officers held its hearing on April 11, 1974. Captain Robert H. Turner testified that he was monitoring the "approved solution room", where cadets were permitted to compare their answers with the correct answers after they had finished marking their answer cards. He observed a cadet, later identified as plaintiff, to be holding his right arm in an unusually stiff position. Captain Turner then noticed that plaintiff's right hand concealed a pencil, and that he was making writing motions over his answer cards, all the while moving back and forth between a wall where the correct answers were indicated, and a desk where a template was located that would indicate the correct answers when held over the answer cards. Captain Turner observed this activity over several minutes, at a distance of from four to ten feet. He did not actually see pencil marks being made on the cards.

Captain Turner thereupon asked Major Dluzyn, then monitoring the examination room, to observe the solution room to see if anything unusual was occurring. Major Dluzyn testified and supported Captain Turner's observations, except that he did not see a pencil in plaintiff's hand.

The testimony of the two officers was corroborated by the appearance of plaintiff's answer cards, which were of the multiple choice type whereby a computer can read blackened squares corresponding to the correct answer. The cards showed six responses entered so lightly that they were not scored by the computer, five of which were correct. Three other responses, unlike all the others on the cards, were characterized as "scribbly." They too were correct.

Plaintiff testified that he had not cheated, and specifically denied that he had a pencil in his hand. His explanation for the unusual motion of his right hand over his cards was that he was pointing to the answers and he ascribed the unusual appearance of his cards to the fact that he was rushing to study Spanish.

He also presented the testimony of his instructor in Environment, who said that plaintiff's grade on the examination was consistent with his performance in the course; of another cadet who saw nothing unusual in plaintiff's behavior in the solution room; and of two cadets who testified that he was of good character and a conscientious student. One other cadet described the solution room.

After deliberating approximately forty-five minutes, the board of officers returned with the finding that plaintiff had "cheat[ed] in violation of the cadet honor code, by marking on his answer card after entering the approved solution room of an Environment 102 written partial review."

The Staff Judge Advocate at the Academy reviewed the record with a view to making a recommendation to the defendant Superintendent as to whether or not the finding of the board was justified. He found that the finding was supported by "substantial evidence,"

which is the standard for board of officer findings contained in paragraph 20 of Army Regulation 15–6. The Superintendent, in turn, determined that plaintiff should be separated from the Academy, and forwarded a recommendation to that effect to the Secretary of the Army in Washington, D. C. The record was reviewed there by a member of the staff of the Judge Advocate General, and the Secretary has recently signed an order separating plaintiff and discharging him from the Army. His actual processing-out from the Academy will take place shortly, unless enjoined.

While the foregoing administrative actions were pending, plaintiff had been attending classes. The Superintendent's determination to recommend his separatation occurred just before the examination period began, however, and at that time the Academy refused to let plaintiff take his first-year final examinations.

On May 24, 1974, a judge of this Court signed a temporary restraining order on consent requiring the Academy to permit plaintiff to take all remaining examinations. The Academy did so, permitted him to take make-up examinations, and graded all the examinations. Plaintiff has received passing grades in all his courses except Environment 102, in which the cheating incident that is the subject of this action took place. In that course he received a grade of "F". His overall average was passing and in the normal course of events he would have been advanced to the third class.

■ Turning to the propriety of issuing a preliminary injunction, "[t]he settled rule is that a preliminary injunction should issue only upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief. Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Co., 476 F.2d 687, 692–693 (2d Cir. 1973); Checker Motors Corp. v. Chrysler Corp., 405 F.2d

319 (2d Cir.), cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969)." Sonesta International Hotels Corp. v. Wellington Associates, 483 F.2d 247 (2d Cir. 1973).

Plaintiff has failed to meet these requirements for the issuance of a preliminary injunction. His primary claim, that the board of officers finding that he had cheated is contrary to the evidence or not supported by substantial evidence, is refuted by the record. After reviewing the record, the Court finds that plaintiff was afforded a full and fair hearing and that the Board of Officers finding is supported by substantial evidence.

The complaint alleges that plaintiff has been denied due process. While it is unquestionably true that cadets have certain due process rights before they can be separated, Hagopian v. Knowlton, 470 F.2d 201 (2d Cir. 1972), none of these rights were violated in plaintiff's case. In the instant case, plaintiff was afforded rights which exceeded the minimal due process requirements set forth in *Hagopian*.

Plaintiff was represented by military counsel at the hearing; he was also entitled to retain civilian counsel if he chose to do so. His military counsel conducted an individual *voir dire* of each member of the board, with the other members absent. Plaintiff was also warned of his right against self-incrimination under Article 31 of the Uniform Code of Military Justice, and was repeatedly assured that the board would draw no adverse inferences from his failure to testify. Nevertheless, he chose to testify and place his credibility in issue. Absent a finding of a denial of procedural due process, this Court is not disposed to substitute its judgment regarding credibility for the judgment of the board which had the opportunity to see and hear the witnesses.

A judge of this Court has recently reviewed, in the light of *Hagopian*, the procedures by which a cadet is separated from the Academy for honor violations, and has upheld them. White v. Knowl-

ton, 361 F.Supp. 445 (S.D.N.Y. 1973); Andrews v. Knowlton, 367 F.Supp. 1263 (S.D.N.Y.1973) (Knapp, J.).

Plaintiff specifically alleges that due process is violated because the only penalty for an honor violation is separation, and suggests that that penalty violates the constitutional prohibition against cruel and unusual punishment as well.

Judge Knapp rejected the due process contention in *White, supra,* 361 F.Supp. at 449, and the "cruel and unusual" argument is rejected by this Court as plainly inapplicable, in the non-criminal context of this case. Unlike the upperclass cadets in *White* and *Andrews*, plaintiff does not even incur an obligation to enter active military duty, so that the sum total of his punishment is that he must go elsewhere for the remaining three years of his college education.

Plaintiff also attacks the procedures used by the cadet honor committee. At the honor committee hearing, such rights as the right to counsel, to cross-examine witnesses, and to have a record, are concededly absent.

As Judge Knapp indicated in *White, supra,* at 449–450, the honor committee determination is somewhat like an indictment. While according to former Academy tradition an honor committee determination might have severe collateral consequences for a cadet, these consequences would only occur if the board of officers had failed to find an honor violation, and that is not plaintiff's situation. As far as the board of officers is concerned, the honor committee's determination is only an allegation, which the board investigates *de novo*.

The argument that the evidence was insufficient as a matter of law because the board's vote was only 3–2, a fact which counsel for defendant disputed at the oral argument of the motion, is without merit. Even in a criminal trial, where a defendant must be found guilty beyond a reasonable doubt, the Supreme Court has ruled that a less-than-unanimous verdict does not violate due proc-

ess. Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972). In the instant case, the applicable regulation provides that a finding only be supported by substantial evidence, the usual standard applied on judicial review of administrative determinations. There is nothing unconstitutional about this standard. See *White, supra,* 361 F.Supp. at 451.

The record of plaintiff's hearing before the board of officers which this Court has reviewed is the best evidence of whether or not he was accorded due process. The evidence presented at that hearing is more than adequate to sustain the finding that plaintiff was "marking on his answer card" in the room where the correct answers were posted.

In view of the foregoing and in the absence of any genuine issue as to any material fact, the defendant is entitled to judgment as a matter of law. Consequently, it is unnecessary to consider the question of possible irreparable injury.

Accordingly, plaintiff's motion for a preliminary injunction is denied and defendant's cross-motion for summary judgment is granted.

Settle order on notice.