**John H. DUNMAR, Appellant,**

v.

**Stephen AILES, Secretary of the Army, Appellee.**

**No. 18997.**

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 10, 1965.

Decided May 20, 1965.

---

13. Note 3 *supra.*

Mr. Paul R. Connolly, Washington, D. C., with whom Mr. James E. Murray, Washington, D. C., was on the brief, for appellant.

Mr. Jerome Nelson, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Joseph M. Hannon, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, BURGER and McGOWAN, Circuit Judges.

PER CURIAM.

This is an appeal from an order of the District Court dismissing Dunmar's complaint for lack of jurisdiction and alternatively granting Appellee's motion for summary judgment if jurisdiction exists. The effect of the District Court's order is to leave standing the action of Appellee as Secretary of the Army separating Appellant from the Corps of Cadets, U. S. Military Academy, for a violation of the Cadet Honor Code. Appellant alleged that the Secretary's separation order was invalid because based on proceedings which were inconsistent with procedural due process [1] and which violated rules and regulations of the Army and the Academy; that the Honor Code was too vague to supply a constitutional predicate for Appellant's separation; and that in any event the Secretary of the Army lacks the power to effect the administrative separation of Appellant,

---

[1]. Although the proceedings leading to separation deal with very significant issues and rights, they are not criminal proceedings to determine "guilt"; rather they are procedures designed to determine the fitness of a member of the military establishment to be commissioned by the President as an army officer on criteria which embody military considerations evolved by both military leaders and the Cadet Corps itself.

that power residing only in the President.

We hold first that the District Court had jurisdiction over the subject matter of each of Appellant's allegations. Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958), establishes such power over allegations reciting action in excess of statutory authority and our own decisions in Ingalls v. Zuckert, 114 U.S.App.D.C. 39, 309 F.2d 659 (1962), and Roberts v. Vance, 119 U.S.App.D.C. ——, 343 F.2d 236, June 18, 1964, have recognized that the District Court may review actions by military authorities which violate their own established regulations.

We turn to the District Court's alternative holding granting summary judgment in favor of Appellee. We conclude the District Court was warranted on this record.

Two sections of the Academy's Regulations are involved here. Regulation 17.13 provides generally for separations for violations of the Cadet Honor Code as follows:

> Cadets who violate the Cadet Honor Code will be separated from the Corps of Cadets. Such cadets may, at the discretion of the Superintendent, be allowed to resign, be tried by courts-martial, or be brought before a board of senior officers convened by the Superintendent to investigate the matter and to make findings and recommendations. * * * If the cadet appears before a Board of Officers and the Superintendent subsequently considers his separation warranted he shall refer the case to the Academic Board. If the Academic Board, upon review of the case, recommends

separation, the Superintendent shall forward such recommendation to the Department of the Army.

No provision is made for the representation by counsel of a Cadet charged with violating the Honor Code, nor is he expressly assured of any opportunity of making his views known to the Academic Board. The other pertinent Regulation is 9.09, which describes the procedure for separating a Cadet "for undesirable habits or traits of character":

> When a cadet exhibits habits or traits of character which appear to render his retention at the Academy undesirable, it shall be the duty of the Superintendent to report in writing such fact to the Academic Board, with a full statement of the facts upon which his report is based. This step shall be taken with view to ascertaining the Board's recommendation as to whether such cadet shall be separated from the Academy. Any cadet so reported shall be furnished a copy of the Superintendent's report in his case, with reference to which a cadet may submit a statement in writing which shall be fully considered by the Board.

Like Regulation 17.13, this paragraph contains no provision for the assistance of counsel, or for the presentation of evidence, or for cross-examination of witnesses.

We note at the outset that the record is barren of any evidence that the procedure followed in this case was out of the ordinary or did not conform to the usual practices of the Academy. The proceedings appear to have had aspects of each of those outlined in the regulations,[2] but the protections afforded Ap-

2. The Superintendent of the Academy apparently followed Regulation 17.13 in offering Appellant his choice of resignation or appearance before a board of officers. The board of officers was instructed to investigate the charge that Appellant had violated the Honor Code, and its finding was that he had. However, it recommended "that the case be referred to the Academic Board for ac-

tion under the provisions of paragraph 9.09, Regulations, USMA." The Academic Board found that Appellant's conduct, which had been found to violate the Honor Code, evidenced "habits or traits of character which render his retention at the Academy undesirable." Nothing in this record indicates that the translation of an Honor Code violation into "undesirable habits or traits of charac-

pellant went substantially beyond those expressly provided for in either paragraph. Following the recommendation of the Cadet Honor Committee, before which he appeared in person, that Appellant be separated from the Corps of Cadets, he was given the option of resigning or appearing before a board of senior officers, and after consulting his family and his counsel, he chose the latter alternative. Throughout the subsequent proceedings Appellant was represented by counsel, who was a member of the Academy Department of Law and a lawyer. He was given a seven-day continuance before appearing before the board of officers, in order that he could prepare his case. Before the board he was allowed to cross-examine witnesses, to present nine witnesses of his own, and to make a closing argument. He testified on his own behalf, but only after being warned of his privilege to remain silent. Following referral of his case to the Academic Board, which made the final recommendation that he be separated, Appellant filed a brief with that body, though he did not appear before it in person. There is no suggestion that the Academic Board relied on evidence of which Appellant was not aware, or that it failed to consider his brief.

We are unable to spell out of these proceedings anything like the disregard for procedural rights at which the Fifth Amendment is directed. Certainly we cannot say, after carefully reviewing the record, that Appellant's separation from the military service was accomplished by procedures that failed to meet the minimum standards of fundamental fairness.[3]

---

ter" departed from usual Academy practice. Absent any indication of anything unusual in this "hybrid" procedure, we cannot say Appellant has been prejudiced, since a finding of either is a sufficient ground for separation. Indeed, he received more in the way of procedural protections than is required by the bare language of either 17.13 or 9.09. Whether a procedure that merely met the explicit requirements of those provisions would be adequate under the Constitution, we need not and do not decide.

3. Appellant has raised two objections to the procedure followed by the Academy that warrant comment. He claims, first that the Academic Board should not have made its own independent findings on the record before it, or, in the alternative, that it should have permitted him to appear before it and present evidence. He does not contend that the Board's findings, which in substance recounted the conduct the board of officers had found to be in violation of the Honor Code, albeit with a somewhat more explicit suggestion that Appellant had engaged in an intentional deception, are without support in the evidence of record. And he overlooks the fact that the board of officers' less "sinister" finding was alone sufficient reason for ordering his separation. Moreover, we are not persuaded that the Academic Board exceeded its authority by making supplemental findings that went beyond those of the board of officers. Neither applicable regulation purports to confine the Board to reviewing the board of officers' findings. The responsibility of recommending separation rested with the Academic Board, and there has been no offer to show that that Board ordinarily considers itself bound by the findings of a board of officers in carrying out such a task.

Appellant's second contention grows out of the Secretary's initial remand of his case to the Academy administration. Following the Academic Board's recommendation, its report was forwarded to the Department of the Army. On the advice of the Assistant Judge Advocate General, the case was returned to the Superintendent for resubmission to the Academic Board because the Staff Judge Advocate at West Point, who reviewed the findings of the board of officers for the Superintendent, had also participated in the deliberations of the Academic Board, though without voting. The Assistant Judge Advocate General's recommendations that the Staff Judge Advocate divorce himself from the case entirely and that the other members of the Board disregard any opinion or advice he may have given were included in the Secretary's order returning the case to the Academy.

Appellant argues that the record does not show whether the Academic Board complied with these instructions when it reconsidered his case and adhered to its original recommendation. It is true that the Board did not in so many words say that the Staff Judge Advocate did

In holding that Appellant has no complaint calling for judicial redress we need not—and we do not—undertake to formulate standards of procedural due process generally applicable to Cadets or other personnel of the military establishment. There is no occasion for us to reach out to articulate or intimate what process may be due in the myriad of varying situations ranging from Cadet training to front line combat; this wide range can call for different degrees of process. It is sufficient for the purposes of this case to say that Appellant received at least what was due him in his circumstances.

■ Appellant's second contention is in effect that the Cadet Honor Code cannot be made the basis of his separation, since, at least as to the conduct underlying the action against him, that Code is void for vagueness. Whatever the application of the vagueness doctrine to matters military, we feel sure that it is not the province of a court to determine what conduct is condemned, and what is not, by the "common law" of the Corps of Cadets—a creature of the Cadets themselves. Cf. Carter v. McLaughry, 183 U.S. 365, 401, 22 S.Ct. 181, 46 L.Ed. 236 (1902). Appellant's conduct was first found to violate this code by the Cadet Honor Committee, a student body entrusted with such matters, second by a board of officers before which Appellant had a full trial-type hearing, third by a reviewing board, fourth by the Superintendent of the Academy, and finally by the Secretary of the Army. We are in no position to find too vague the code thus found applicable. See Orloff v. Willough-

by, 345 U.S. 83, 91–92, 73 S.Ct. 534, 97 L.Ed. 842 (1953); Warren, *The Bill of Rights and the Military,* 37 N.Y.U.L.Rev. 181, 187 (1962).

■ We also find insubstantial the assertion that only the President may administratively separate a Cadet from the United States Military Academy. The argument is grounded on 10 U.S.C. § 4342(b), which says that "All cadets are appointed by the President." Even if this provision meant that the President must or does personally consider and make all appointments to the Academy, it would not necessarily follow that only the President could separate a Cadet. Nor need the President in terms delegate this function to the Secretary of the Army; indeed 3 U.S.C. § 302 provides that "nothing herein shall be deemed to require express authorization in any case in which such an official would be presumed in law to have acted by authority or direction of the President." Surely the presumption of which this section speaks is raised by 10 U.S.C. § 4334(a), placing supervision and charge of the Academy—an advanced institution to train and develop officers for the highest ranks in the military establishment—within the Department of the Army under officers "detailed to that duty by the Secretary of the Army," and 10 U.S.C. § 3012(b), authorizing the Secretary to conduct "all the affairs" of that Department.

We have considered Appellant's other contentions and find them without merit; the judgment appealed from is therefore

Affirmed.

not participate in its second decision, but its resolution recites that it proceeded "in accordance with the provisions contained in" the Secretary's order. Appellant urges that once an agency's procedures have been found wanting in a particular case, the courts cannot indulge in a presumption of procedural regularity. But there was no prior judicial findings of irregularity in this case; the Secretary simply sought, before acting himself, to

make sure that no procedural shortcoming infected the decision he was being asked to implement. The Academic Board reconsidered the case "in accordance with" his instructions. Moreover, the record contains no evidence at all that the Staff Judge Advocate remained on the scene. Under these circumstances, we cannot assume that the Board did not do what it says it did.