**Bruce F. BIRDWELL, 740589K,**
**Plaintiff,**

v.

**James R. SCHLESINGER, Secretary of**
**Defense, et al., Defendants.**

**Civ. A. No. 74–M–384.**

United States District Court,
D. Colorado.

Nov. 14, 1975.

712

General, Washington, D. C., and James L. Treece, U. S. Atty., Denver, Colo., for defendants.

## MEMORANDUM AND ORDER

MATSCH, District Judge.

On April 29, 1974, Bruce F. Birdwell initiated this civil action with a complaint alleging that he was being disenrolled as a cadet in the United States Air Force Academy in violation of his constitutional rights. A motion for a temporary restraining order was heard and denied on April 30, 1974. Because Mr. Birdwell was a member of the First Class which was scheduled to graduate in June, 1974, a motion for preliminary injunction was heard on May 9 and 10, 1974. The motion was denied.

The defendants have moved, alternatively, for dismissal under F.R.C.P. 12 and for summary judgment under F.R. C.P. 56. Upon the evidentiary record made at the preliminary injunction hearing, the discovery, the affidavits filed with the Court and the pleadings, I conclude that the facts which are not controverted show that there is no basis for granting the relief requested by the complaint. Accordingly, summary judgment should be entered for the defendants.

An evaluation of the plaintiff's claims and contentions requires a consideration of the context in which disciplinary action was taken, resulting in the final order of disenrollment entered by the Secretary of the Air Force on May 3, 1974.

The Air Force Academy was established within the department of the Air Force by an Act of Congress. 10 U.S.C. § 9331 *et seq.* The stated purpose of the Academy is the instruction and preparation for military service of selected persons called "Air Force Cadets", appointed by the President from nominations made by U. S. Senators and U. S. Representatives from their respective states and districts, together with some additional appointments.

Robert Tabor Booms, Reynard, Dorwart & Booms, P. C., Denver, Colo., for plaintiff.

Captain Bruce Clark, USAF, Litigation Div., Office of the Judge Advocate

Upon completion of a four year course of study, the degree of bachelor of science may be conferred upon graduates of the Academy and they may be appointed second lieutenants in the Regular Air Force. 10 U.S.C. § 9353. Cadets entering the Academy are required to sign an agreement to accept an appointment and serve as a commissioned officer of the Regular Air Force for at least five years immediately after graduation and a cadet who does not fulfill his agreement may be transferred by the Secretary of the Air Force to the Air Force Reserve in an appropriate enlisted grade and ordered to active duty for not more than four years. 10 U.S.C. § 9348, as amended.

Air Force Academy Cadets are subject to a number of Air Force Regulations (AFR) applicable to all persons in the United States Air Force. They are also subject to special Air Force Cadet Regulations (AFCR).

The Superintendent of the Academy is responsible for the government of the Academy and he is also the Commanding Officer of the Academy and the military post. 10 U.S.C. § 9334. The Air Force Cadet Regulations are published by the Commandant of Cadets, who is responsible for the administration of the rules and discipline governing cadet life. AFCR 35-6, Discipline and Conduct, is the regulation establishing the basis for conducting the disciplinary system. It creates certain classifications of offenses and establishes an administrative system for evaluation and punishment for each class.

Class I offenses are minor breaches of conduct which are sanctioned by demerits awarded by the Squadron Air Officer Commanding (AOC), a commissioned officer assigned to supervise and maintain military control over the cadets assigned to his squadron.

A Class II offense is a minor breach of conduct which may be punished by demerits and the award of up to 20 "punishments". Punishments are tours, consisting of a period of time walking with a rifle, and confinements. The AOC has final authority to award such demerits and punishments to a maximum limit. A greater punishment of that nature requires the approval of the Group Air Officer Commanding.

A Class III offense is a major breach of conduct. The determination of punishment for such an offense is made by the Commandant of Cadets after a review of the facts and circumstances and a recommendation for punishment has been made by a Commandant's Disciplinary Board (CDB) consisting of an officer adviser and five senior ranking First Class Cadets designated by the Commandant. Penalties for Class III offenses may include "conduct probation" which reduces the cadet's privileges to those of the next lower class. Conduct probation is imposed or removed by the Commandant. A cadet on conduct probation who has additional disciplinary problems may be called before a Commandant's Board to show cause for retention in the Academy. The accumulation of demerits may also result in conduct probation and may result in the same type of show cause proceeding.

There are no legal counsel at a Commandant's Board. The cadet is made aware of the allegations against him and he must be given an opportunity, after consultation with legal counsel, to submit matters in his own defense.

Cadets are required to maintain certain standards in conduct, studies and aptitude for commissioned service. A cadet found to be deficient in conduct by a Commandant's Board will be recommended for dismissal. If the Commandant concurs in the findings and recommendations of the board, he will recommend separation from the Academy for deficiency in conduct. That matter must be considered by the Academy Board, consisting of the Superintendent, the Dean of Faculty, the Commandant of Cadets and eight other Academy officials. AFR 53-30. The Academy Board makes its recommendation concerning

disenrollment to the Secretary of the Air Force, who has the final decision.

In addition to the general conduct system just described, specific acts of misconduct may be handled under specific disenrollment regulations, AFR 53–3. Under Section E of that Regulation, when information is received indicating that a cadet has conducted himself in a manner which would make his qualifications for continuation as a cadet doubtful (but the conduct would not warrant trial by court-martial) the Commandant will cause an investigation to be made. If it discloses evidence of disqualification for continued cadet status, the Commandant will forward the case to the Superintendent recommending referral to a Board of Officers.

If the Superintendent determines that referral would be proper, a Board of Officers is convened under AFR 11–1. A hearing is held before that Board upon a prior notification of charges. The respondent cadet is assigned military counsel and may have additional military or civilian counsel available to him. Witnesses are called for examination and cross examination. The respondent may testify or remain silent as he chooses. The board members may be challenged for cause and a judge advocate serves as legal adviser to the Board.

The Board of Officers makes findings of fact which are forwarded to the Academy Board for its review and determination on the question of disenrollment. If the Academy Board recommends disenrollment under AFR 53–3, the case is returned to the Board of Officers to hear evidence on the character of discharge or separation and to make recommendations on that question. Again the cadet has the opportunity to appear before the Board with counsel at that time.

The recommendations of the Board of Officers are then forwarded to the Superintendent who makes his recommendations as to what type of discharge should be awarded and the Secretary of the Air Force has the final decision.

Aptitude for commissioned service relates to the strength of character and leadership potential of cadets. Serious deficiencies in aptitude result in proceedings initiated by the Commandant and the convening of a Commandant's Board to show cause for retention in the same manner as deficiencies in general conduct.

Completely separate from this system of military discipline is the self imposed Honor Code which reads "we will not lie, steal, or cheat, nor tolerate among us anyone who does."

This code was adopted and is enforced by the Cadet Wing. It is explained in an Honor Reference Hand Book made available to all cadets. That handbook defines lying as "making an assertion which is intended to deceive or mislead." "Quibbling" is defined in that handbook as follows:

A person can easily create a false impression in the mind of his listener by cleverly wording what he says, omitting relevant facts, or telling a partial truth. When he knowingly does so with the intent to deceive or mislead, he is quibbling. Because it is an intentional deception, quibbling is a form of lying.

The administration of the Cadet Honor Code is the responsibility of an Honor Committee with Honor Representatives elected by the cadets. A reported breach of the Honor Code results in an investigation by Honor Representatives. If that investigation reveals the probability of a breach, an honor hearing is conducted by an Honor Board appointed by the Honor Committee Chairman. Such a board consists of eight First-Class Honor Representatives. The Commandant's Executive for Honor and Ethics is present at all honor hearings.

At such hearings the cadet is entitled to be present during submission of the evidence and he may question the witnesses through the Chairman of the Committee. The cadet also may call his own witnesses and he may testify or remain silent. The case is discussed in

the absence of the respondent cadet and the Honor Board votes by secret ballot. The standard for determination of guilt is that of reasonable doubt and a unanimous vote of the board is required for a finding of guilt. A cadet found guilty of an honor violation is expected to resign from the Academy, after being given legal counsel by a judge advocate.

Bruce F. Birdwell enrolled at the Air Force Academy in the Fall of 1970 with the Class of 1974. He had academic difficulties in the beginning; but, they are irrelevant here. During his first three years of enrollment as a cadet, Mr. Birdwell was twice placed on aptitude probation but each time he was removed from aptitude probation after performing in an acceptable manner. That also is not relevant here.

On October 2, 1973, a Commandant's Disciplinary Board found that the plaintiff was absent from cadet limits after taps in violation of AFCR 35-6, and for this infraction he was awarded 35 demerits, 18 confinements and 4 weeks loss of off-base privileges. Because of this award of demerits, Peter D. Bernstein, the plaintiff's Air Officer Commanding, placed him on conduct probation on November 5, 1973.

AFCR 522-6 establishes the privilege and policy for owning or maintaining and driving motor vehicles. Maintaining is defined in that regulation as the primary support and/or use of a motor vehicle which is owned by another person. That regulation prohibits the owning or maintaining of automobiles by cadets who are on conduct probation.

AFCR 35-2 prohibits the rental or lease of any type of public or private living quarters within a 250 mile radius of the Academy without prior approval of the Group AOC.

On January 28, 1974, a Commandant's Disciplinary Board was convened to hear the allegation that Cadet Birdwell was maintaining an automobile while on conduct probation in violation of AFCR 522-6. The Board found such a violation and recommended 45 demerits, 30

tours, 6 weeks loss of off-base privileges and that he meet a Commandant's Board to show cause for retention as a cadet.

On January 31, 1974, a Cadet Honor Board was convened to determine allegations that Cadet Birdwell had lied in connection with statements made by him to AOC Bernstein concerning the automobile which he was found to have been maintaining. That Honor Board also considered allegations concerning the leasing of an apartment in Colorado Springs in violation of AFCR 35-2. The Honor Board found the plaintiff guilty of lying with respect to the automobile and found that the necessary intent to deceive did not exist on the other allegations.

On February 4, 1974, the defendant Vandenberg, then serving as Commandant, appointed Captain Douglas Groninger to investigate the allegation that the plaintiff had violated the Cadet Honor Code by lying. Captain Groninger made a written report concluding with the recommendation that a Board of Officers be convened.

By a letter of notification, dated February 15, 1974, General Vandenberg advised Cadet Birdwell that action was being initiated to disenroll him from cadet status. A detailed letter, dated February 26, 1974, notified the plaintiff that an officer's board would be convened and that letter set forth the charges, designated the witnesses to be called and advised of the rights and procedure to be followed. The letter referred to AFR 53-3 and to AFR 11-1.

A Board of Officers was convened on March 12, 1974. At that time Mr. Birdwell was represented by military counsel and civilian counsel. They moved to dismiss the proceedings on various grounds, including a denial of due process. The plaintiff's counsel also sought clarification of the regulation governing the proceeding, expressing their concern that there may be a difference in the burden of proof. The legal adviser and recorder clarified that matter and the defendant and his counsel were advised

that the Academy had the burden of proof.

The entire evidentiary record of the board hearing is in evidence in this civil case. That record reflects that there was a *de novo* hearing with examination and cross examination of the witnesses called by the recorder; testimony was given by Mr. Birdwell and witnesses were called by his counsel. The hearing lasted one and one-half days. The legal adviser instructed the board as to the law which they must apply. The Board went into closed session for deliberations at noon of the second day of the hearing and written findings were given at noon on the following day.

The Board of Officers found that the plaintiff had violated AFCR 522-6 by maintaining an automobile; that he had lied concerning the matter; that he had lied concerning the rental of an apartment and that he had violated AFCR 35-2. Additionally, the Board found the plaintiff to be deficient in aptitude and conduct. Mr. Birdwell was found not guilty of the other allegations against him. The concluding paragraph of this board's written findings was:

> The board unanimously concurs that our findings on all allegations with the exception of 2a(3), 2b(1)(a), 2b(1)(b), and 2b(1)(c), substantiate beyond a reasonable doubt that Cadet Birdwell's conduct has been incompatible with exemplary standards of personal conduct, character, and integrity required for continuance in cadet status. Furthermore, the board unanimously concurs that C1C Birdwell does not possess the aptitude to remain in cadet status or to be commissioned as an officer in the USAF.

On March 19, 1974, the plaintiff was ordered segregated from other cadets except for the purpose of attending classes. He was required to be accompanied by an escort unless en route to class.

On April 4, 1974 the Academy Board accepted the findings of the Board of Officers and made the recommendation that Mr. Birdwell be disenrolled. After this action, the plaintiff was not allowed to attend classes at the Academy.

On April 15, 1974, the plaintiff again appeared before the same Board of Officers pursuant to AFR 53-3 to determine the character of discharge or separation. That Board determined that the plaintiff should be separated from the Air Force Academy and be transferred to the Air Force Reserve to serve a three year commitment as an enlisted man. The Secretary of the Air Force ordered that action on May 3, 1974.

The plaintiff claims that these proceedings which resulted in his disenrollment violated his rights to procedural due process and substantive due process under the Fifth Amendment; that his Fifth Amendment privilege against self incrimination was violated and that the administrative segregation violated his rights to freedom of speech and freedom of association under the First Amendment. Jurisdiction to redress these wrongs is alleged under 28 U.S.C. § 1331 because the claims arise under the Constitution and involve more than $10,000.-00. For purposes of this opinion, the jurisdictional amount is assumed.

Whether an invasion of the interests protected by the Bill of Rights gives rise to a cause of action for damages or other relief cognizable in the Federal Courts under § 1331 is a question on which there is much current dispute. In *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946) the Supreme Court recognized the possibility of such claims under the Fourth and Fifth Amendments. The district court was directed to assume jurisdiction to decide whether substantial questions were raised.

In *Bivens v. Six Unknown Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) a majority of the Supreme Court did find a cause of action for damages caused by an unreasonable search and seizure. That case involved aggravated facts and the scope and extent of the implied claim for relief remain uncertain. The difficulty in the application of the broad language of that opinion to specif-

ic cases is reflected in the interpretation of it made by the Court of Appeals, Second Circuit in *Bivens v. Six Unknown Agents,* 456 F.2d 1339 (2nd Cir. 1972).

Two recent opinions of the Court of Appeals, Tenth Circuit, suggest that the concept of a constitutional tort is applicable for violations of protections other than the Fourth Amendment. *Jr. C. of C., Rochester, Inc. N. Y. v. U. S. Jaycees, Tulsa, Okl.,* 495 F.2d 883 (10th Cir. 1974); *Dry Creek Lodge, Inc. v. United States,* 515 F.2d 926 (10th Cir. 1975).

It is not necessary for me to reach a conclusion on this question to decide this case. I am not confronted with a threshold issue of jurisdiction. An extensive evidentiary hearing has been held and the uncontroverted facts before me show that these claimed constitutional violations are insubstantial and without merit.

█ In *Hagopian v. Knowlton,* 470 F.2d 201 (2nd Cir. 1972) it was held that a cadet at the United States Military Academy at West Point was entitled to the rudiments of due process in disciplinary proceedings resulting in his expulsion. That decision followed an earlier opinion recognizing such rights in a Merchant Marine Cadet. *Wasson v. Trowbridge,* 382 F.2d 807 (2nd Cir. 1967). Both opinions recognize the importance of a disciplinary system within such institutions. I accept the views expressed in *Hagopian, supra,* as applicable in the case now before me. The uncontroverted facts show that the Board of Officers hearing met all of the requirements of due process set forth in that opinion.

█ The plaintiff contends that the decision of the Board of Officers should not be considered separate and apart from the other actions preceding it. He asserts that his rights were adversely affected by the Honor Board hearing, the CDB hearing and the administrative investigation by Captain Groninger. While it may be true that no Board of Officers hearing would have been held if these other actions had not been taken,

it does not follow that the hearing or the board's findings and conclusions were tainted by them. After examining the hearing transcript, I must conclude that ample evidence was submitted to the board at the hearing to support those findings and conclusions.

█ It is not required that procedural due process be afforded at every stage of developing disciplinary action. What is required is that an adequate hearing be held before the final act of disenrollment. *Andrews v. Knowlton,* 509 F.2d 898 (2nd Cir. 1975). That was done in this case.

█ The plaintiff claims the denial of substantive due process in that the standard of conduct with respect to lying prescribed by the Cadet Honor Code is vague, uncertain and nebulous. That contention was made with respect to a comparable honor code at the United States Military Academy in *Dunmar v. Ailes,* 121 U.S.App.D.C. 45, 348 F.2d 51 (1965). I concur in that Court's rejection of that argument.

██ The claim of violation of the privilege against self incrimination is without merit. No criminal proceedings are involved and the plaintiff's voluntary enrollment in the Academy constitutes a waiver of that privilege if it were applicable. The administrative segregation was a reasonable exercise of military discipline and could not be considered an invasion of First Amendment rights.

In reaching the conclusion that the constitutional claims made by the plaintiff in this case are not substantial, I am acutely aware of the cautions expressed by the United States Supreme Court concerning the intrusion of civilian courts into military matters. *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), and *Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953).

■ To the extent that the plaintiff seeks relief by way of damages against the individual defendants, the record before me is sufficient to establish their immunity. In determining the course of further proceedings in *Bivens, supra,* the Second Circuit saw an analogy between the cause of action created by the Supreme Court and that which arises under 42 U.S.C. § 1983 with respect to the qualified immunity granted to state officers. Accordingly, the district court was directed to consider such qualified immunity on remand. At the time of that decision, it was recognized that police officers had available the defense of good faith and a reasonable belief in the legality of their conduct. Under that standard the conduct of the defendants in this case would be within such immunity.

The scope of immunity under 42 U.S.C. § 1983 appears to have been extended by the United States Supreme Court in *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) and *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). Under those decisions the relevant questions are whether the defendants knew or reasonably should have known that their actions within their sphere of official responsibility would violate the plaintiff's constitutional rights or whether such actions were taken with malicious intention to cause a deprivation of constitutional rights or other injuries to the plaintiff. The record before me negates any such knowledge or action.

■ The importance of military discipline in accomplishing the special mission of the armed services has given rise to a special immunity for military persons acting officially. *Bailey v. VanBuskirk,* 345 F.2d 298 (9th Cir. 1965). Additionally, damage actions against the United States are excluded for injuries in military service. *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). All of the de-

fendants in this case acted within their official military roles and their actions are within the scope of this immunity.

■ The complaint herein also claims under 42 U.S.C. § 1985 and 28 U.S.C. § 1343. The applicability of the conspiracy section of the Civil Rights Act to Federal officials is questionable. It seems to have been recognized in *Dry Creek Lodge, Inc. v. United States, supra.* Again it is not necessary to answer the question because the civil rights involved are the constitutional rights already discussed in this opinion. Moreover, it has been held consistently that there must be class based discrimination to involve § 1985 and the plaintiff is not a member of any class or group which would be subject to such discrimination. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

■ 28 U.S.C. § 1361 confers jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States to perform a duty owed to the plaintiff. That statute is not applicable to the facts of this case because the duty which may be compelled must be ministerial, plainly prescribed and free from doubt. *Prairie Band of Pottawatomie Tribe of Indians v. Udall,* 355 F.2d 364 (10th Cir. 1966), *cert denied,* 385 U.S. 831, 87 S.Ct. 70, 17 L.Ed.2d 67. The power to confer degrees at the United States Air Force Academy is discretionary with the Secretary of the Air Force. The power to commission officers in the Regular Air Force is discretionary with the President of the United States. There is no jurisdiction in this Court to order such acts by mandamus.

■ The plaintiff's claims for declaratory relief under 28 U.S.C. §§ 2201 and 2202 fall with the findings and conclusions made in the foregoing. Additionally, the question of *in personam* jurisdiction over the individual defendants need not be decided because of these rulings.

The claim for relief under 28 U.S.C. § 2241 is without merit. The plaintiff does not contend that he is not subject to a requirement of military service; he simply wants to change the form of that service.

Insofar as the complaint can be read to claim that any of the defendants failed to act within the applicable regulations of the Air Force and the Air Force Academy or that there was any impropriety in their actions this Court will not consider such contentions because the plaintiff has not exhausted the administrative remedy given to him by 10 U.S.C. § 1552. Under that section administrative errors within any military department may be corrected through procedures established by the secretary of that department. Pursuant to that authority, the Secretary of the Air Force has created the Air Force Board for the Correction of Military Records. In *Bard v. Seamans*, 507 F.2d 765 (10th Cir. 1974) the Court held specifically that while there may be judicial review of a discharge from the Air Force, pursuant to the Administrative Procedure Act, the failure to pursue the administrative remedy of application to the Board for Correction of Military Records precludes judicial relief. The same result was reached in *Horn v. Schlesinger*, 514 F.2d 549 (8th Cir. 1975).

Upon the foregoing, it is

Ordered that the Clerk shall enter judgment of dismissal of the complaint and this civil action and that the defendants shall have judgment for their costs, to be taxed.