Cadet Timothy D. RINGGOLD, individually and on behalf of all other similarly situated cadets of the U.S. Military Academy, Plaintiff,

v.

The UNITED STATES of America et al., Defendants.

No. 76 Civ. 2442.

United States District Court, S. D. New York.

Sept. 2, 1976.

---

Siller & Galian by Edward G. Galian, Sidney Siller, New York City, for plaintiffs.

Robert B. Fiske, Jr., U.S. Atty., S.D.N.Y. by William R. Bronner, Nathaniel Gerber, Asst. U.S. Attys., New York City, for defendants.

## OPINION AND ORDER

OWEN, District Judge.

This action—an outgrowth of the most recent so-called "West Point cheating scandal"—contests the constitutionality of the Cadet Honor Code (the "Code") and Honor System (the "System") maintained by the United States Military Academy. Plaintiff Timothy Ringgold, suing on behalf of himself and others similarly situated, is a cadet in his third year of studies charged with a violation of the Honor Code. In previous decisions, I denied his motions for a preliminary injunction and for the convocation of a three-judge court. On this cross-motion, the government has moved to dismiss. Because I am asked to consider affidavits and documents outside the pleadings, I treat this as a motion for summary judgment.

In his complaint, plaintiff asserts his cause of action in the most general of terms. He contends:

That the illegal fostering, implementation and enforcement of the said Cadet Honor Code is detrimental to and im-

pedes the fulfillment of the mission of West Point in that it is subjectively invoked, unequally implemented and enforced and creative of divisiveness and discontent among the cadets who are expressly required thereunder to spy and inform upon their peers. (¶ 18)

He seeks an injunction (1) banning the Code, (2) eliminating or dismissing all officers or bodies whose function is to implement and enforce it, (3) discontinuing all pending hearings, trials and investigations relating to Code violations, (4) reinstating all cadets previously found guilty, (5) rejecting all resignations submitted in response to charges of Code violations, and (6) expunging from service records all references to Code violations. Although it is difficult to perceive behind the exceedingly general language of his complaint, any specific legal cause of action or basis for the sweeping forms of relief sought, in passing upon this motion, I interpret the complaint to incorporate all the various arguments that he has advanced: specifically, that the Code and System are unconstitutional because (1) the executive branch of government is without the authority to promulgate them, (2) the Code is excessively vague, (3) the same penalty is applied regardless of the seriousness of the violation, (4) the System denies cadets due process of law, and (5) the Code creates divisiveness and encourages various base qualities by requiring cadets to "spy" upon each other.

The Cadet Honor Code consists of the creed that "a cadet will not lie, cheat, or steal, nor tolerate those who do." The sole sanction for a violation is separation from the Academy.

Under the Honor System, cadets are given the responsibility for administering the Code and investigating in the first instance suspected violations of it. To fulfill this responsibility, cadets are elected by their peers to the Cadet Honor Committee. In most instances, a suspected violation of the Code is first investigated by a cadet "regimental honor representative," then referred to a subcommittee for further investigation, and, finally, if the subcommittee so recommends, referred to a cadet honor board, consisting of twelve voting members, for a hearing and determination whether there has been a violation. At the hearing, the accused is given the opportunity to testify, to present witnesses on his behalf, to submit questions to other witnesses, and to respond to the evidence against him. If there is a guilty verdict—which must be unanimous—the cadet is sent to a "transient" barracks and requested to resign.[1]

The Honor Committee does not have the authority to order the separation of a cadet from the Academy. If that is sought, and if the Superintendent of the Academy concurs, the Committee's findings are sent to a Board of Officers which conducts a further and *de novo* hearing. Before the Board, an accused cadet is entitled to have counsel, to present evidence on his own behalf and cross-examine adverse witnesses. 32 C.F.R. § 519.1. The Board then submits a recommendation to the Superintendent who in turn forwards his recommendation to the Department of Army Headquarters for final decision. Dept. of Army Regs. 16.03(c).

Plaintiff was initially charged with the Honor Code violation of "toleration"[2] because he asserted, at a meeting with the Undersecretary of the Army and various other cadets, that numerous cadets not then charged with Honor Code violations had engaged in acts comparable to the ones committed by those who had been charged. After he refused to answer questions about this statement put to him by the Chairman of the Honor Committee or appear before the Committee, he was found guilty of toleration by the Committee, and sent to a special barracks. Initially, the Superintendent declined to forward the Commit-

---

1. This description is based upon the pamphlet, "Honor Committee Procedures" put out by the Committee. In an introductory memo, the Committee's chairman notes that the procedures set forth are neither permanent nor legally binding on the Committee.

2. "Toleration" is defined in the Honor Committee instruction booklet as "knowingly permitting a violation of the Honor Code to go unreported." Honor Instruction (U.S.M.A.) at 2.

tee's finding to a Board of Officers. But after plaintiff questioned him why charges were being dropped and apparently repeated his earlier statement about knowing of unreported violations, the Superintendent recommended that he be investigated by a Board of Officers. It was at this point, prior to a hearing before the Board, that plaintiff filed his complaint.[3]

The government urges that the court does not have jurisdiction to hear plaintiff's complaint. It does not dispute that "[t]he relationship between the Cadet Honor Committee and the separation process at the Academy has been sufficiently formalized, and is sufficiently interdependent, so as to bring that committee's activities within the definition of governmental activity for the purposes of our review." *Andrews v. Knowlton,* 509 F.2d 898, 906 (2d Cir.), *cert. denied,* 423 U.S. 873, 96 S.Ct. 142, 46 L.Ed.2d 105 (1975). Nonetheless, the government argues that the complaint should be dismissed because the doctrine of exhaustion of administrative remedies requires plaintiff to appear before an Officer Board and, if necessary, pursue his right to appeal to the Superintendent and Army Headquarters prior to bringing this action. Plaintiff responds that because he challenges the legality of the entire system, rather than confining his attack to procedural aspects of its application, the exhaustion doctrine is not applicable here.

■ It is well established that in a typical case involving a decision by military authorities, the plaintiff must exhaust his remedies within the military before appealing to federal court. *See, e. g., Michaelson v. Herren,* 242 F.2d 693 (2d Cir. 1957). This doctrine is designed both to preserve the balance between military and civilian authorities, *Horn v. Schlesinger,* 514 F.2d 549 (8th Cir. 1975), and to conserve judicial resources. *Yonan v. Seamans,* 380 F.Supp. 505 (N.D.Ill.1974). There can be little doubt that if plaintiff were challenging the Committee's findings that he was guilty of

toleration, he would be required to exhaust his military remedies before appealing to this court.

■ Plaintiff, however, does not deny that he has violated the prohibition against toleration. Rather, he attacks its legal and moral basis, and that of the entire system of which it is a part. To insist that he further pursue his military remedies would be to require him to participate in that very system whose legality he denies.

Further, it is doubtful that a Board of Officers could consider the arguments raised here. According to Army Regulations, Board proceedings are "administrative and not judicial in nature." 32 C.F.R. § 519.2(b). It is essentially an investigative body, staffed by non-lawyers, whose primary function is to "ascertain the facts" rather than make legal judgments about the validity of the standards in question. 32 C.F.R. § 519.1. And even if the Board could consider plaintiff's contentions, such claims, based solely upon constitutional grounds, are "singularly suited to a judicial forum and clearly inappropriate to an administrative board." *Downen v. Warner,* 481 F.2d 642, 643 (9th Cir. 1973) (challenge to Marine Corps regulation on grounds of sex discrimination). Although the Staff Judge Advocate apparently reviews the Board's proceedings, the government has pointed to no stage in the appellate route within the army at which plaintiff would have the opportunity to present his arguments to a judicial body. Accordingly, I conclude that plaintiff's claims are not barred by the exhaustion doctrine.

■ The government further argues that the complaint should be dismissed because it fails to state a claim. In considering whether a claim is stated, it is necessary at the outset to ascertain the limits upon this court's jurisdiction. It is established that federal courts have jurisdiction to determine whether the promulgation of the Code and System is within the authority of

---

**3.** This account is based upon the submitted affidavits of plaintiff and of the Staff Judge Advocate at West Point. Although they differ in some specifics, the exact sequence of events is immaterial for the purposes of this motion.

the Army. *Dunmar v. Ailes,* 121 U.S.App. D.C. 45, 348 F.2d 51 (1965), and to review questions of due process raised by their application. *Andrews v. Knowlton,* 509 F.2d at 903. But plaintiff's complaint goes further to challenge their morality and practicality, seeking, in effect, review of their substantive content. The Constitution does not, however, prescribe any particular disciplinary code for use at West Point. It is a matter that has traditionally been left to the discretion of the military. As this Circuit has cautioned: "the Academy's rigorous and exacting standards of discipline, behavior and personal decorum for cadets . . . should not be interfered with by the judiciary." *Hagopian v. Knowlton,* 470 F.2d 201, 204 (2d Cir. 1972). Accordingly, except to the extent that an asserted constitutional right is implicated, this court does not have jurisdiction to adjudicate plaintiff's attack upon the Honor Code and System.[4]

Plaintiff's major constitutional claim is that the promulgation of the Honor Code and System by the executive branch of government is an infringement upon the constitutional power of Congress "to make Rules for the Government and Regulation of the land and naval forces." U.S. Const. art. I, § 8. He argues that pursuant to this power Congress has enacted a body of law concerning military discipline which has the effect of preempting the army-created Honor Code and System.

■ The power to regulate the armed forces is not delegated exclusively to Congress. The Constitution denominates the President commander in chief of the armed forces, and pursuant to that role his power "to establish rules and regulations for the government of the army is undoubted." *United States v. Eliason,* 16 Pet. 291, 301, 41 U.S. 291, 301, 10 L.Ed. 968, 972 (1842).

So long as the military rules prescribed by the President are not inconsistent with congressional statutes, they are within the scope of his authority as commander in chief. *United States v. Symonds,* 120 U.S. 46, 49, 7 S.Ct. 411, 30 L.Ed. 557, 558 (1887).

In addition to the constitutional source, there is also a statutory basis for presidential regulation of the military. Congress has explicitly authorized the President to "prescribe regulations for the government of the Army." 10 U.S.C. § 3061. And it has delegated to the Secretary of the Army responsibility for the "training . . . preparedness, and effectiveness of the Army" and the power to prescribe regulations to carry out these functions. 10 U.S.C. § 3012.

Pursuant to the constitutional role of the President and statutory authorization, the Secretary of the Army promulgated Army Regulation 12.14 stating the Cadet Honor Code and the rule that a cadet who violates it shall be separated from the Military Academy. The procedure by which a suspected violator is brought before a Board of Officers, and its finding forwarded to higher authorities is outlined in 16.03. To be sure, no mention is made in army regulations of the Cadet Honor Committee. But in essence, the Committee's role with respect to Honor Code violations is entirely investigative. As a means of encouraging self-discipline, without ceding to it any authority to make final adjudications,[5] the Academy has assigned it the function of identifying suspected violators. Such a limited role does not require formal written sanction.

There is a heavy presumption in favor of the validity of the Honor Code and System. Although a Code was first established at West Point in 1817, and cadet administra-

---

4. Even when a constitutional violation is claimed, "[o]rderly government requires us to tread lightly on the military domain, with scrupulous regard for the power and authority of the military establishment to govern its own affairs within the broad confines of constitutional due process." *Friedberg v. Resor,* 453 F.2d 935, 937 (2d Cir. 1971).

5. See the discussion in *Andrews v. Knowlton,* 509 F.2d 898; and *Gaines v. Hoffman,* 75 Civ. 5120 (S.D.N.Y. Jan. 12, 1976), *aff'd without opinion,* 535 F.2d 1241 (2d Cir., 1976). Attacks upon the Honor Committee's functioning tend to indulge in the dubious assumption that it is intended to perform a judicial function.

tion of it dates back to 1923,[6] Congress has taken no steps to resist this alleged usurpation of its authority. And courts have upheld the Code and System against a variety of challenges to the Army's power to promulgate them. *See, e. g., Dunmar v. Ailes,* 121 U.S.App.D.C. 45, 348 F.2d 51 (1965); *Andrews v. Knowlton,* 367 F.Supp. 1263 (S.D.N.Y.1973), *aff'd,* 509 F.2d 898 (2d Cir.), *cert. denied,* 423 U.S. 873, 96 S.Ct. 142, 46 L.Ed.2d 105 (1975).

Plaintiff has not alleged any specific inconsistency between the Honor Code or System and any laws passed by Congress. In fact, the procedures employed in enforcing the Code are designed to avoid conflict with the congressionally enacted Uniform Code of Military Justice (UCMJ). When a serious offense is suspected, the Honor Committee is instructed to suspend inquiries until the offense has been investigated under military law. Honor Committee Procedures at 17. And under Army Regulation 16.03, the Superintendent has the discretion to direct that an accused violator of the Code, whose alleged violation is also a breach of the UCMJ, be tried by court-martial instead of by a Board of Officers.

Plaintiff's preemption claim is based upon the theory that the laws enacted by Congress relating to military discipline are designed to be exhaustive. Thus, he urges that the only legal grounds for expulsion are a violation of the oath prescribed in 10 U.S.C. § 4346 (which includes obedience to the UCMJ), deficiencies in conduct and study as outlined in 10 U.S.C. § 4351, and a violation of the hazing prohibition set forth in 10 U.S.C. § 4352. He contends that the large number of offenses enumerated in the UCMJ, and the fact that it is made applicable to cadets, 10 U.S.C. § 802(2), indicates that Congress did not intend that there be any non-statutory basis for expulsion from West Point.

Even accepting plaintiff's theory, the Honor Code and System could be justified as a means by which the Academy has chosen to identify, pursuant to 10 U.S.C. § 4351, those cadets who are "deficient in conduct." However, it is unnecessary to rely upon this analysis because the preemption argument is without substance.

■ The argument comes down to the proposition that the prohibitions of the UCMJ, aimed largely at violations of criminal law, are so sufficient and appropriate as standards of discipline and conduct in the special context of a military academy that it must be presumed that Congress intended that the executive branch promulgate no others. This presumption is far from compelling. As a leading critic of the Honor System acknowledged:

> [I]t seems clear at the outset that the substantive proscriptions of the UCMJ cannot be deemed to preempt academy rulemaking. These institutions must serve broader functions than the mere maintenance of order among cadets. The prohibitions of the Uniform Code are not comprehensive enough to inculcate in cadets the sense of discipline and the intangible qualities which will be expected of them as military officers. Thus, the situation at the academies is one in which the exercise of the correlative rulemaking power of the Chief Executive has not been statutorily precluded. M. Rose, A Prayer For Relief at 21–22.

Were the plaintiff correct, the Secretary of the Army would be without authority to prescribe regulations of conduct adapted to the special circumstances and needs of the Academy. I decline to reach such a conclusion.

■ The various other arguments made against the Honor Code and System do not require extended discussion because they have been examined in prior cases. The argument that the sole penalty of expulsion is unconstitutionally severe has been considered and rejected by this Circuit. *Andrews v. Knowlton,* 509 F.2d at 908. The argument that the Code is unconstitutionally vague has been rejected by the District of Columbia Circuit. *Dunmar v. Ailes,* 348 F.2d at 55. *Accord, Birdwell v. Schlesinger,* 403 F.Supp. 710 (D.Colo.1975). And in any

**6.** M. Rose, A Prayer For Relief 15 n. 69 (1973).

**704**

event, it is foreclosed by the Supreme Court's decision that the far vaguer prohibitions contained in the UCMJ are not unconstitutionally vague. *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

■ Plaintiff also claims that he is a victim of selective prosecution and has been placed in double jeopardy. But both of these contentions require as a premise that a Cadet Honor Committee investigation and finding is analogous to a criminal trial and conviction. This Circuit has specifically held that due process safeguards do not apply at the Honor Committee level because the Committee is only a "charging body whose decisions had no effect other than to initiate *de novo* proceedings before a Board of Officers." *Andrews v. Knowlton,* 509 F.2d at 907. In addition, with respect to the selective prosecution claim, plaintiff does not make the necessary allegation that the discrimination directed against him was based upon impermissible considerations such as race or religion. *United States v. Berrios,* 501 F.2d 1207 (2d Cir. 1974).

Plaintiff urges that he be permitted an opportunity to engage in discovery because most of the materials relating to the Code and System are in the possession of the Academy. But he has not raised a claim upon which discovery could be based. Even accepting all his factual allegations, and even after giving him every benefit of the doubt in interpreting his complaint, he does not assert a cause of action upon which relief can be granted. No amount of discovery could remedy this fundamental deficiency. Accordingly, defendants' motion for summary judgment is granted.

It is so ordered.