Robert A. GUNNING

v.

Emmett H. WALKER, Jr., Lieutenant General, Chief, National Guard Bureau; Charles D. Franklin, Lieutenant General, Commanding General, First United States Army; John T. Gereski, Major General, The Adjutant General, Connecticut Army National Guard.

Civ. No. H–86–1244 (AHN).

United States District Court,
D. Connecticut.

June 30, 1987.

Patrick W. Boatman, Hartford, Conn., for plaintiff.

Jeremiah F. Donovan, Asst. U.S. Atty., New Haven, Conn., Michal Laurie Tingle, law student intern, for defendants.

## RULING ON FEDERAL DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

NEVAS, District Judge.

On July 1, 1986, the plaintiff Captain Robert Gunning was notified that his federal recognition as an officer in the Connecticut Army National Guard was being withdrawn. This action was the culmination of proceedings instituted against the plaintiff as a result of an alleged sexual assault by the plaintiff and two others on a female enlisted member of the Connecticut National Guard. The female Guard member reported the incident, alleged to have occurred on May 2, 1982, to military authorities and the Connecticut State Police. The then Adjutant General of the State of Connecticut took no action against the plaintiff. However, a subsequent Adjutant General, John Gereski, a named defendant in this action, followed up on the charges leveled against the plaintiff. The defendants proceeded under National Guard Regulation 635–101 ("NGR 635–101"). Letters were exchanged between the plaintiff and various military officials, notifying the plaintiff of the charge against him and of the various courses of conduct available to him. On November 15, 1985, a Board of Officers was appointed pursuant to NGR 635–101, para. 14b(3), to determine whether the plaintiff's federal recognition should be withdrawn.

On April 5, 1986, the Board of Officers recommended that the plaintiff's federal recognition be withdrawn, finding that the plaintiff had "engaged in conduct unbecoming an officer and exhibited moral and professional dereliction of duty...." Defendants' Exhibit B at 187–88. The Chief, National Guard Bureau, approved the decision and directed that the plaintiff's federal recognition be withdrawn as of July 1, 1986.

Plaintiff filed a complaint in this court on September 30, 1986. He requests a declaration that the military proceedings are null and void; reinstatement of commission and entitlements and benefits that would have accrued since July 1, 1986; attorney's fees; and other just and equitable relief. The defendants have moved to dismiss or, in the alternative, for summary judgment on the grounds that (1) the plaintiff has not exhausted administrative remedies, and (2) the military's decision is not reviewable. The defendants have filed a memorandum in support of their motion and the plaintiff has answered in opposition. Oral argument was held on March 31, 1987. Subsequent to oral argument, at the court's request, the parties submitted supplemental memoranda. The matter is now ready for resolution.

### I. Exhaustion of Administrative Remedies

■ Defendants argue that the plaintiff has failed to exhaust his administrative remedies by not appealing to the Army Board for Correction of Military Records (the "ABCMR"). However, defendants have not referred the court to any military regulations that make an appeal to the ABCMR mandatory. Furthermore, defendants acknowledge that the exhaustion requirement is within the court's discretion. Defendants' Memorandum at 26. Therefore, the court will consider the plaintiff's arguments against the necessity of an appeal to the ABCMR.

The plaintiff asserts that the withdrawal of federal recognition constitutes a final agency action pursuant to 5 U.S.C. Section 704. Section 704 provides, in relevant part, that agency action is final "unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority." Appeal to the ABCMR does not operate as a stay. Army Regulation No. 15–185, para. 9. As a result, the withdrawal of the plaintiff's federal recognition was not held in abeyance pending further appeal. According to section 704, therefore, it may be deemed a final agency action and

further exhaustion of administrative remedies is unnecessary.

In addition, although there are policy concerns that support the exhaustion requirement, they are not controlling in the current situation. Neither deference to Congress, nor respect for administrative authority, nor fostering of judicial economy would be served by requiring exhaustion. *Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund,* 693 F.2d 290 (3d Cir.1982). The record in this case is well developed. Furthermore, the plaintiff has raised issues of some gravity. It is likely that unless the plaintiff is awarded all the relief he seeks, he will ultimately appeal to this court. Considering the issues and the record, and the fact that appeal to the ABCMR is for the claimant's benefit, neither Congress nor the Army should take offense at this court's review. Therefore, defendants' motion to dismiss or to grant summary judgment for failure to exhaust administrative remedies is denied.

## II. *Review of Military Decisions*

The judiciary has traditionally been reluctant to review decisions made by military tribunals. " 'Judicial deference ... is at its apogee when legislative action under the congressional authority to raise and support armies and make rules and regulations for their governance is challenged.' " *Goldman v. Weinberger,* 475 U.S. 503, ——, 106 S.Ct. 1310, 1313, 89 L.Ed.2d 478 (1986), *quoting Rostker v. Goldberg,* 453 U.S. 57, 70, 101 S.Ct. 2646, 2654, 69 L.Ed.2d 478 (1981). *See also Chappell v. Wallace,* 462 U.S. 296, 301, 103 S.Ct. 2362, 2366, 76 L.Ed.2d 586 (1983). Deference, however, is not synonymous with abdication, especially where issues of constitutional dimension are raised. *Rostker,* 453 U.S. at 67, 101 S.Ct. at 2653; *Mack v. Rumsfeld,* 609 F.Supp. 1561, 1563 (W.D.N.Y.1985), *aff'd,* 784 F.2d 438 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986); *Crawford v. Cushman,* 531 F.2d 1114, 1121 (2d Cir.1976).

■ The Second Circuit Court of Appeals has determined that judicial review is also permissible when actions of the armed services are in violation of their own regulations or beyond their powers. *Crawford,* 531 F.2d at 1120. *See also Nixon v. Secretary of the Navy,* 422 F.2d 934, 937 (2d Cir.1970); *Smith v. Resor,* 406 F.2d 141, 145 (2d Cir.1969). The Second Circuit, however, narrowed the scope of judicial review in its affirmation in *Mack v. Rumsfeld,* 784 F.2d 438 (2d Cir.1986), where it pointed out that

the portion of *Crawford* that stated that judicial deference to military decisions applies only to the question of their justiciability and that military decisions are accorded no presumption of validity ... was specifically rejected by us as to matters 'reasonably relevant and necessary to furtherance of our national defense' in *Katcoff v. Marsh,* 755 F.2d 223, 234 (2d Cir.1985), in light of the intervening Supreme Court opinion in *Rostker v. Goldberg....*

*Id.* at 439.

After considering the plaintiff's allegations in light of the standard for reviewability promulgated by the United States Supreme Court and the Second Circuit, this court concludes that the plaintiff's claims are not reviewable. In reaching this decision, the court has considered the plaintiff's claims to the extent necessary to determine whether defendants' actions were "reasonably relevant" to military purpose.

Initially, the plaintiff challenges the legality of NGR 635–101, stating that only the President of the United States can promulgate such regulations. NGR 635–101 was adopted under authority of the Secretary of the Army. The statutory basis for NGR 635–101 is 32 U.S.C. Section 323(b), which provides that "[u]nder regulations to be prescribed by the President, the capacity and general fitness of an officer of the National Guard for continued Federal recognition may be investigated at any time by an efficiency board...." The President, however, has the ability to delegate functions. The scope of this power is found in 3 U.S.C. Section 302, which states in pertinent part:

This chapter shall not be deemed to limit or derogate from any existing or inher-

ent right of the President to delegate the performance of functions vested in him by law, and nothing herein shall be deemed to require express authorization in any case in which such an official would be presumed in law to have acted by authority or direction of the President.

Although there was no express delegation by the President, certainly the Secretary of the Army would be "presumed in law" to have acted by the President's direction in promulgating regulations for Army personnel separations. The adoption of NGR 635–101 was not, therefore, illegal.

The plaintiff next makes several allegations relating to violation of the right to due process under the Fifth Amendment to the United States Constitution. The plaintiff argues that he was subjected to administrative double jeopardy, based on the fact that a procedural defect forced a termination of the proceedings. Upon correction of the defect, the hearing was recommenced. The Supreme Court has held that the double jeopardy clause of the Fifth Amendment refers to proceedings that are "essentially criminal." *Breed v. Jones*, 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975) (citing *Helvering v. Mitchell*, 303 U.S. 391, 402, 58 S.Ct. 630, 634, 82 L.Ed. 917 (1938), where the Court stated that "[c]ivil procedure is incompatible with the accepted rules and constitutional guaranties governing the trial of criminal prosecutions, and where civil procedure is prescribed for the enforcement of remedial sanctions, those rules and guaranties do not apply."). Neither the proceedings nor the available sanctions against the plaintiff were criminal in nature. Although the withdrawal of the plaintiff's federal recognition is a harsh sanction, it did not place him "in jeopardy of life or limb." U.S. Const. amend. V. In light of the deference afforded to military actions that are not arbitrary, irrational, or in violation of applicable regulations, the recommencement of the hearing satisfies the constitutional standard applied to the military.

The plaintiff also complains that he was wrongly assigned the burden of proof and has pointed out that in proceedings regarding elimination of active army officers, the government is assigned the burden of proof. However, according to National Guard regulations, in a proceeding before a board of officers, "[t]he burden of proof rests with the officer to produce convincing evidence that his Federal recognition should not be withdrawn." NGR 635–101, para. 18a. Rather than speculate as to the military's rationale in imposing this different burden, it is sufficient to note that in this particular case, the government went forward and presented its evidence, to which the plaintiff presented rebuttal evidence.

In a case involving separation of a cadet from the United States Military Academy, the District of Columbia Circuit observed that the court should not

undertake to formulate standards of procedural due process generally applicable to Cadets or other personnel of the military establishment. There is no occasion ... to reach out to articulate or intimate what process may be due in the myriad of varying situations ranging from Cadet training to front line combat; this wide range can call for different degrees of process. It is sufficient ... to say that Appellant received at least what was due him in his circumstances.

*Dunmar v. Ailes*, 348 F.2d 51, 55 (D.C. Cir.1965). *See also Rostker*, 453 U.S. at 67, 101 S.Ct. at 2653 (stating that judicial deference in military context dictates that "the tests and limitations to be applied may differ" from the standards applied in other contexts). In this controversy, assignment of the burden of proof to the plaintiff did not rise to the level of a constitutional violation.

The plaintiff also complains that he was tried under NGR 635–101 rather than under the Connecticut Code of Military Justice (the "Code"), Conn.Gen.Stat. Section 27–141 *et seq.* According to section 27–142, Conn.Gen.Stat., the Code "applies to all members of the state military forces who are not in the federal service." Members of the Connecticut National Guard must also join the Army National Guard of the United States, thereby subjecting them-

selves to federal regulation. 10 U.S.C. Section 3261(b). However, even if federal regulation does not constitute being in federal service, 32 U.S.C. Section 327 states that "courts-martial *may* be convened by the ... governor" (emphasis added) as a result of charges leveled against a National Guard member not in federal service. Should the governor choose to initiate such action, Conn.Gen.Stat. Section 27–141 *et seq.*, the Connecticut Code of Military Justice would be the appropriate statute under which to proceed. In the instant case, however, the action was initiated by the First United States Army and it was its prerogative to proceed under NGR 635–101. *See* U.S. Const. art. VI, Clause 2 (Supremacy Clause). As a result, the two year statute of limitations found in Section 27–185(c), Conn.Gen.Stat., is inapplicable.

The plaintiff also claims that he was not afforded adequate notice of the charges against him. At oral argument, however, the plaintiff's counsel admitted that the plaintiff was informed of all of the charges prior to the commencement of the hearing and the plaintiff consciously decided not to ask for a continuance since he desired to proceed with the case. The plaintiff's failure to ask for a continuance cannot lead to a claim of lack of notice. Likewise, the plaintiff's argument that he was found guilty of an offense with which he had not been charged does not withstand logical examination. The plaintiff argues, moreover, that his behavior did not constitute "conduct unbecoming an officer," one of the charges against him, and that the sanction imposed was too severe. The action taken by the military against the plaintiff is "not so arbitrary and irrational that it cannot stand...." *Roth v. Laird*, 446 F.2d 855, 856 (2d Cir.1971). This is an area best left to military discretion. As the United States Supreme Court stated in *Goldman*, " '[t]he military must insist upon a respect for duty and a discipline without counterpart in civilian life,' in order to prepare for and perform its vital role." 106 S.Ct. at 1313, *quoting Schlesinger v. Councilman*, 420 U.S. 738, 757, 95 S.Ct. 1300, 1312, 43 L.Ed.2d 591 (1975). "The need for special regulations in relation to military discipline, and the consequent need and justification for a special and exclusive system of military jutice, is ... obvious ...; no military organization can function without strict discipline and regulation that would be unacceptable in a civilian setting." *Chappell*, 462 U.S. at 300, 103 S.Ct. at 2365, *citing Parker v. Levy*, 417 U.S. 733, 743–44, 94 S.Ct. 2547, 2555–56, 41 L.Ed.2d 439 (1974); *Orloff v. Willoughby*, 345 U.S. 83, 94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953).

### III. *Conclusion*

The plaintiff is to be commended for the thoroughness in identifying potentially troublesome aspects of the First United States Army's proceedings against him. Careful consideration of the issues, however, leads this court to grant the federal defendants' motion to dismiss on the ground that the plaintiff's claims are non-reviewable.